CHILD WELFARE SOCIETY OF FLINT *v.* KENNEDY SCHOOL DISTRICT.

1. CONSTITUTIONAL LAW—STATUTES—VALIDITY.

Unless prohibited by the express language of the Con, stitution or by necessary implication, an act passed by the legislature must be sustained.

2. SAME—LIMITATION ON POWER OF LEGISLATURE.

The Constitution is a limitation on the power of the legislature, and not a grant of power to it.

3. SCHOOLS AND SCHOOL DISTRICTS—POWER OF LEGISLATURE TO CONTROL SCHOOLS.

Subject only to the provisions of the Constitution (Art. 11, §§ 1, 2, 9), the legislature has entire control over the schools of the State, including the division of the territory of the State into school districts, the conduct of the schools, the qualifications of the teachers, and the subjects to be taught.

4. SAME—EVIDENCE—JUDICIAL NOTICE.

On certiorari to review a writ of mandamus compelling defendant school district to admit children residing in

On the question as to what constitutes residence entitling child to the privilege of public schools, see notes in 26 L. R. A. 591; 36 L. R. A. (N. S.) 341; 51 L. R. A. (N. S.) 234.

a home in said district to its school as residents under the provisions of Act No. 103, Pub. Acts 1921, the Supreme Court will take judicial notice of the fact that under Art. 10, § 1, of the Constitution each school district will, for the current year, receive $11.70 per child, as shown by its school census, and that therefore no financial burden will be imposed on defendant by the order made.

5. SAME — STATUTES — LICENSED HOMES FOR CHILDREN — SUPERIN-TENDENT OF PUBLIC INSTRUCTION—CONSTITUTIONAL LAW.
   Act No. 103, Pub. Acts 1921, amending 2 Comp. Laws 1915, § 5689, relating to the taking of the census of children of school age and providing, in effect, that children to the number designated by the superintendent of public instruction, who are cared for and dwelling in a home licensed by the State board of corrections and charities, shall, for educational purposes, be residents of the school district in which such home is located, *held*, not uncon-stitutional as beyond the power of the legislature to enact, in view of the settled policy of this State in reference to educational matters.

6. SAME — CONSTITUTIONAL LAW—STATUTES — JUDICIAL DUTIES — SUPERINTENDENT OF PUBLIC INSTRUCTION.
   In view of the provisions of the Constitution (Art. 10, § 2) and the statute (2 Comp. Laws 1915, § 5641) giving the superintendent of public instruction general super-vision over the public schools, it cannot be said that the duty to ascertain and determine the number of children that can be accommodated in the schools in the district in which licensed homes for children are located, imposed on him by Act No. 103, Pub. Acts 1921, is a judicial one which cannot be delegated to other than judicial officers.

7. SAME—MANDAMUS—CERTIORARI—DISMISSAL.
   Where a child welfare society, organized under 2 Comp. Laws 1915, §§ 9054-9062, was not entitled to a license from the State board of corrections and charities because not engaged in the activities regulated by said act, but it might have been licensed under Act No. 136, Pub. Acts 1919, entitling the children in its home to attend the school in defendant district as residents under Act No. 103, Pub. Acts 1921, and defendant did not base its re-fusal to admit said children on the ground of lack of a proper license, the writ of certiorari to review a writ

of mandamus compelling admission of the children to said school will be dismissed.

Certiorari to Genesee; Black (Edward D.), J.   Submitted June 30, 1922.   (Calendar No. 30,234.)   Decided October 2, 1922.

Mandamus by the Child Welfare Society of Flint to compel Kennedy School District to admit certain children into its school.   From an order granting the writ, defendant brings certiorari.   Writ of certiorari dismissed.

*David S. Frackelton* and *Farley & Selby,* for appellant.

*Homer J. McBride,* for appellee.

SHARPE, J.   The plaintiff society was organized in November, 1916, under the provisions of sections 9054-9062, inclusive, 2 Comp. Laws 1915.   Its purposes as expressed in its articles are:

"To promote the health and moral and social conditions of babies and children in the city of Flint and vicinity; to educate mothers to properly care for babies and children; to promote beneficial legislation relative to the care, health and moral welfare of children; and to assist worthy activities therefor."

On December 19, 1917, Charles S. Mott and his wife conveyed to St. Paul's parish of the Protestant Episcopal church of the city of Flint a tract of land in the county of Genesee.   The church parish donated the use of the home on this property to the plaintiff for the purpose of providing a home for children in their care.   It is located in the defendant school district. On September 30, 1921, a license was issued by the State welfare commission to the trustees of the plaintiff to maintain not to exceed 40 children in this home.   In December, 1921, there were at the home

approximately 15 children of school age and physically fitted to attend the public schools.   A request for their admission to the defendant school was made and refused.   Plaintiff petitioned the circuit court for the county of Genesee for a mandamus to compel their admission which, after answer filed and a hearing on the issues presented, was granted.   The proceeding is before us for review on certiorari.

1. Defendant insists that these children were not residents of the district and justifies its refusal to receive them for that reason.   The character of children and the conditions under which they are received into the home are thus stated by Mrs. Mabel Benschoten, the secretary of the bureau of social service of the society who has charge thereof:

"The child welfare home is a boarding home for children.   It is not a home for delinquent children or neglected children.   It is a boarding home for children who have but one parent, perhaps, or some trouble in the home, and for that reason they cannot maintain their home for some length of time.   Those are the children we admit.   Very often they are children of parents who don't live together.   We have some children whose father or mother is insane.   We have others whose father and mother is dead; where the home is broken up in one way or another, and they have no place to live and no home.   *   *   *   We have some children who are not paying anything, whose parents are not working, and are unable to pay, but the majority of them are paying a small sum. They do not get discharged from the home when the parents are unable to pay.   We take care of them unless the parent is neglecting the child, then the matter is taken in probate, but where the parent is interested in the child and is making an effort to keep said child, we do everything we can for that parent, but not for neglected children.   These are children of parents whose homes are broken up and who have no place to keep their children.   We make an investigation upon application of the parent and if they come within the requirements for admission to the home, we

give a card of admission to the parent and the child is admitted. The child when taken into the home is under the supervision of the matron and must do exactly as she says. Any one does not have the right to take the children from the home. * * * The home requires that some pay for the care of these children. For several reasons we ask the parent to pay board. We think they will feel that they have an interest in the child if it is only 50 cents a week. The parent pays, or if there is a case where the man is out of work or unable to pay for any reason, then the Child Welfare Society pays. That is one of the carrying agencies and they finance it."

The compulsory school act (2 Comp. Laws 1915, § 5979) provides that:

"Every parent, guardian or other person in the State of Michigan, having control and charge of any child between the ages of seven and sixteen years, shall be required to send such child to the public schools during the entire school year, and such attendance shall be continuous and consecutive for the school year fixed by the district in which parent, guardian or other person in parental relation may reside." * * *

Children being taught in a private or parochial school are exempted from the provisions of the act under certain conditions. Unless the children in this home between the ages prescribed shall be permitted to attend the school in the defendant district, they cannot be maintained there by plaintiff, as it is apparent that the society cannot provide a private school for their education.

Plaintiff bases its right to compel admission on Act No. 103, Pub. Acts 1921, being an amendment to section 5689, 2 Comp. Laws 1915. This section provides for the taking of a census of the names and ages of all children between five and twenty years of age whose parents or guardians reside in the school district. Children in reformatories, prisons, asylums,

almshouses or other charitable institutions are not to be included, except as follows:

"(*a*) Children in such institutions and children living in the school district placed in homes licensed by the State board of corrections and charities who regularly attend the public schools;

"(*b*) Orphans whose parents at the time of death resided in such school district or city.   Children of either class shall be included in the district or ward where such institution is located, except children in class (*a*) where the parents or either of them reside in the city or district, and in such cases the legal residence of the child is that of the parent, *except children placed in homes licensed by the State board of corrections and charities which children shall be considered residents of the school district where the licensed home, in which they are living, is located.* The school board of a school district where a licensed home is located shall refuse to include in the census list of said district the names of children being cared for in said licensed home whenever said school board is served with a written notice by the superintendent of public instruction that the school room or rooms of said school district are inadequate for school purposes, and that no greater number of names of such children shall be included in the census list of the district than the number designated by the said superintendent of public instruction."   *   *   *

In legal effect the amendment provides that children, to the number designated by the superintendent of public instruction, who are cared for and dwelling in such licensed home, shall, for educational purposes, be residents of the school districts in which licensed homes are located.   Unless prohibited by the express language of the Constitution or by necessary implication the act must be sustained.   The Constitution is a limitation on the power of the legislature, not a grant of power to it.   *People* v. *Blodgett,* 13 Mich. 127; *Whallon* v. *Ingham Circuit Judge,* 51 Mich. 503; *Attorney General* v. *Preston,* 56 Mich. 177.

The policy of this State in reference to the educa-

tion of its people was first expressed in the Ordinance of 1787 in which it was said:

"Religion, morality and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged."

This preamble has since been adopted as a fitting introduction to the article in our several State Constitutions dealing with educational matters. It now appears as section 1 of article 11 of our present Constitution. Section 2 provides for the election of a superintendent of public instruction and delegates to him "general supervision of public instruction in the State." Section 9 provides:

"The legislature shall continue a system of primary schools, whereby every school district in the State shall provide for the education of its pupils without charge for tuition." * * *

The legislature has entire control over the schools of the State subject only to the provisions above referred to. The division of the territory of the State into districts, the conduct of the school, the qualifications of teachers, the subjects to be taught therein are all within its control. In *Attorney General* v. *Lowrey*, 131 Mich. 639, 644, it was said:

"The school district is a State agency. Moreover, it is of legislative creation. It is true that it was provided for in obedience to a constitutional requirement; and, whatever we may think of the right of the district to administer in a local way the affairs of the district under the Constitution, we cannot doubt that such management must be in conformity to the provisions of such laws of a general character as may from time to time be passed, and that the property of the district is in no sense private property, but is public property, devoted to the purposes of the State, for the general good, just as almshouses and court-houses are, although confided to local management,

and applied to uses which are in a sense local, though in another sense general."

The primary school system must be continued.   The foundation stone of this system was and is free education.   It guarantees to the children of the State the right to secure a primary education free of charge. The legislature has zealously guarded that right. Under this system a burden is imposed on taxpayers to assist in maintaining a school although they may have no children of their own to attend.   The Constitution provides that certain revenues of the State shall be devoted exclusively to the support of such schools (Art. 10, § 1), and we may take judicial notice of the fact that under this provision each district will this year receive $11.70 per child as shown by its school census.

It is apparent that no financial burden will be imposed on the district by the order made.   The primary school money received will more than compensate for any increased expense in maintaining the school.   No additional school building, no extra teacher is required.   The efficiency of the school cannot be seriously interfered with.   The number of pupils which may be permitted to attend will be determined by the superintendent of public instruction.   The statute does not assume to change their domicile.   In effect it but provides that while dwelling in defendant district and being there cared for by plaintiff, under a license lawfully issued, they shall, if they attend the school therein, be treated as residents thereof for the purpose of ascertaining and determining the share of the primary school interest fund to which the district will be entitled.   The authorities relied on by counsel for defendant, among them *School District* v. *Yerrington,* 108 Mich. 414, and *Lake Farm* v. *School District,* 179 Mich. 171 (51 L. R. A. [N. S.] 234), are not con-

trolling.   In these cases the subject of legislative power was not considered or discussed.

We find no express provision in the Constitution prohibiting such legislation.   The matter is one of public concern.   No individual rights are affected.   In view of the settled policy of this State in reference to educational matters as indicated above, we are unwilling to say that the law in question was not within the constitutional power of the legislature to enact.

2. Counsel urge that the duty imposed on the superintendent is judicial in its character and that the power conferred cannot be delegated to other than judicial officers.   Under the constitutional provision and also under the statute (2 Comp. Laws 1915, § 5641), this official is given general supervision of the public schools.   The statute imposes on him the duty "to require all school districts to maintain school or provide educational facilities for all children resident in such district for at least the statutory period." Under the act in question he is required to ascertain and determine the number of children which can be accommodated in the schools in which these homes are located.   If the act be workable some person must perform this duty.   To whom can it be so safely entrusted as to the person having general supervision of the school under the constitutional and statutory provisions?   His act is not, in the strict sense of the term, a judicial one.   *Hartford Fire Ins. Co.* v. *Raymond,* 70 Mich. 485; *Hand* v. *Auditor General,* 112 Mich. 597; *Northrup* v. *Maneka,* 126 Mich. 550; *Kennedy* v. *State Board of Registration,* 145 Mich. 241 (9 Ann. Cas. 125) ; *Mackin* v. *Detroit-Timkin Axle Co.,* 187 Mich. 20.   If exercised arbitrarily it would doubtless be subject to judicial review.

3. Plaintiff's license purported to have been issued under the provisions of Act No. 300, Pub. Acts 1913

(1 Comp. Laws 1915, § 2001 *et seq.*).. Counsel for the defendant insist that the "object for which it was organized as expressed in its charter is wholly inconsistent with the purposes of homes entitled to a license" under this statute. The first section of this act makes it unlawful for any person, society, organization or corporation—

"to engage in the business of receiving, maintaining or placing out minor children in homes in this State by indenture, adoption, on trial, or otherwise, without having in full force a license therefor issued by the State board of corrections and charities in the manner herein prescribed: *Provided,* That nothing in this act shall apply to any State institution maintained and operated by the State."

Section 2 provides that the board before granting a license shall investigate—

"the methods of doing business, the facilities for receiving, caring for and placing out children."

Section 4 provides that the licensee shall keep a record of the names, etc., of each child coming within its custody or control, "the manner in which the custody of the child was obtained, the name and residence of the person with whom such child is placed," and that no child shall be placed in any home unless it has been approved in writing by the county agent of such board. Under sections 5 and 7 of the juvenile court act (1 Comp. Laws 1915, §§ 2015, 2017) children may be committed by such court to homes licensed under this act.

It is apparent that the plaintiff society was not organized to engage in nor is it engaged in the activities regulated by this act. It was not entitled to a license thereunder. A license might, however, have been issued to it under the provisions of Act No. 136, Pub. Acts 1919. The first section of this act reads:

"Whoever has in his custody or control for a longer

period than thirty days, one or more children under the age of fifteen years unattended by a parent or guardian, except children related to him by blood or marriage, for the purpose of providing such child or children with care, food and lodging, shall be deemed to maintain a boarding home for children: *Provided,* That nothing in this act shall be construed to apply to the legal guardian of the child."

The language of the amendment to the school law is broad enough to include children licensed under either act. The license issued has now expired. The refusal of the district board to admit the children of the home was not based on the lack of a proper license.

We feel constrained to dismiss the writ, with costs to appellee.

FELLOWS, C. J., and WIEST, MCDONALD, CLARK, MOORE, and STEERE, JJ., concurred. BIRD, J., did not sit.