## JONES v. GRAND LEDGE PUBLIC SCHOOLS.

1. SCHOOLS AND SCHOOL DISTRICTS—LEGISLATURE.

    The legislature is vested with complete authority to determine the manner of creating and operating a system of public schools and school districts and prescribing the powers and duties of school officials, the qualifications of teachers and the subjects to be taught (Const 1908, art 11, §§ 1, 9).

2. SAME—STATES—LOCAL GOVERNMENT.

    The matter of providing for, and the control of the public school system is a State matter entirely distinct from local government, except so far as the legislature may choose to authorize local cooperation (Const 1908, art 11 §§ 1, 9).

3. SAME—DISTRICT A STATE AGENCY.

    A school district is a State agency created by the legislature, the management of which must be in conformity to laws of a general character and whose property is public, devoted to the purposes of the State for the general good (Const 1908, art 11, §§ 1, 9).

4. SAME—LEGISLATURE.

    The power of the legislature with reference to school districts embraces the power to create and alter them, regulate the powers and duties of boards of education, provide for the management of the affairs of such districts, direct and control the system of education of the State, and generally exercise with reference thereto the authority of a sovereign State over its governmental agencies (Const 1908, art 11, §§ 1, 9).

5. STATUTES—CONSTRUCTION.

    The Courts have nothing to do with a plain and unambiguous statute but to obey it, although they may give, without distortion, a sensible and reasonable interpretation of legislative expressions which are obscure; it being especially important not to strain or bend the meaning of words of a statute to meet unexpected emergencies.

---

* Continued from Volume 348.

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur, Schools §§ 7, 8.
[2] 47 Am Jur, Schools §§ 8, 12.
[5, 6] 50 Am Jur, Statutes § 225.
[7] 47 Am Jur, Schools §§ 13, 154.

6. SAME—INTENT.

> The legislature must be held to intend the meaning which it has plainly expressed, there being no room for construction, or attempted interpretation to vary such meaning.

7. SCHOOLS AND SCHOOL DISTRICTS—ADMISSION OF NONRESIDENT STUDENTS—DISCRETION OF BOARD—TUITION.

> The board of education of a school district maintaining a high school has discretionary power to admit qualified nonresident high school students but the duty of fixing rates of tuition in the event of such admission is mandatory (PA 1955, No 269, §§ 582, 583, 731, 761).

8. COSTS—PUBLIC QUESTION—INJUNCTION—ADMISSION OF HIGH SCHOOL STUDENTS.

> No costs are allowed in suit to enjoin defendant school district from refusing to accept qualified nonresident students for attendance at its high school, a public question being involved (PA 1955, No 269, §§ 582, 583, 731, 761).

Appeal from Eaton; McDonald (Archie D.), J. Submitted June 11, 1957. (Docket No. 43, Calendar No. 47,155.) Decided July 18, 1957.

Bill by Robert W. Jones and 35 others against Grand Ledge Public Schools to enjoin latter's refusal to admit nonresident students to its high school. Bill dismissed on motion. Plaintiffs appeal. Affirmed.

*Monaghan & Monaghan & Crawmer (Byron D. Walter,* of counsel) and *Parks, Church & Wyble (Jesse D. Parks,* of counsel), for plaintiffs.

*Miller, Canfield, Paddock & Stone (Snyder & Loomis,* of counsel), for defendant.

CARR, J. The question at issue in this case is whether the board of education of the Grand Ledge school district may refuse to accept for admission to its high school nonresident students who have completed the first 8 grades and are desirous of high school instruction. Some of the plaintiffs who have

joined in the suit are officers of school districts that have heretofore been sending students to defendant's schools and have been paying tuition and transportation costs therefor. Other plaintiffs are parents of minor children who are residents of districts not maintaining high schools and who are desirous of continuing their studies beyond the 8th grade. Residents of school districts which have heretofore sent students to the Grand Ledge public schools have also joined in the suit on the ground that they will be affected in the future by the result.

The bill of complaint avers that defendant maintains an accredited high school at the city of Grand Ledge, and that nonresident students have been denied enrollment in the 9th grade of said high school. It is the position of the plaintiffs, as set forth in their pleading, that the board of education of defendant is without authority to refuse admission to the schools under its jurisdiction of duly qualified nonresident pupils making application for enrollment.

Plaintiffs asked in their bill of complaint that an order issue requiring defendant to show cause why it should not be enjoined from denying admission to its schools of the pupils in question, and also for a temporary restraining order preventing defendant from refusing to accept said pupils. In accordance with the prayer of the bill an order was issued by a circuit court commissioner of the county containing the restraining provision requested. At the time the circuit judge was absent from the county. The matter was heard by the judge on September 17, 1956, and the temporary injunction sought was denied, the court being of the opinion that as a legal proposition the board of education of the defendant school district had the right to say whether or not nonresident students should be admitted to the schools under its supervision.

Under date of September 26, 1956, defendant filed its motion to dismiss the bill of complaint, alleging therein that the pleading did not state a cause of action for equitable relief and that plaintiffs were not entitled under the law to compel admission of the pupils in question to the high school of the defendant. Following a hearing on the motion the court, under date of November 7, 1956, entered an order dismissing the cause. Plaintiffs have appealed, claiming in substance that under pertinent provisions of the State Constitution and of the school code of 1955* the court was in error in denying the relief sought. It is the position of appellee that under the present code providing for the regulation of matters pertaining to education and the maintenance of schools plaintiffs are not entitled to the equitable remedy sought by them.

Article 11, § 1, of the Michigan Constitution (1908) declares that:

"Religion, morality and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged."

Section 9 of the same article directs the legislature to "continue a system of primary schools, whereby every school district in the State shall provide for the education of its pupils without charge for tuition." It has been repeatedly recognized by this Court that the legislature is vested with complete authority to determine the manner in which the directives of the Constitution shall be carried out, the creation and operation of a system of public schools, the creating of school districts, and the powers and duties of school officials chosen in accordance with the law.

---

* PA 1955, No 269 (CL 1948, § 340.1 *et seq.* [Stat Ann 1955 Cum Supp § 15.3001 *et seq.*]).

In *MacQueen* v. *Port Huron City Commission,* 194 Mich 328, 336, it was said:

"Fundamentally, provision for and control of our public school system is a State matter, delegated to and lodged in the State legislature by the Constitution in a separate article entirely distinct from that relating to local government. The general policy of the State has been to retain control of its school system, to be administered throughout the State under State laws by local State agencies organized with plenary powers independent of the local government with which, by location and geographical boundaries, they are necessarily closely associated and to a greater or less extent authorized to co-operate. Education belongs to the State. It is no part of the local self-government inherent in the township or municipality except so far as the legislature may choose to make it such. *Belles* v. *Burr,* 76 Mich 1; *Attorney General, ex rel. Zacharias,* v. *Detroit Board of Education,* 154 Mich 584. The general school laws were carefully planned and enacted to guard that distinction; provision was made for organization of the common school districts, with officers elected at school meetings by electors with defined qualifications, and who as a school board were given large plenary powers and control of school matters, practically independent from the local government of municipalities in which the schools were situated."

Of like import is *Child Welfare Society of Flint* v. *Kennedy School District,* 220 Mich 290, 296, where the Court, after referring to certain provisions of the State Constitution, said:

"The legislature has entire control over the schools of the State subject only to the provisions above referred to. The division of the territory of the State into districts, the conduct of the school, the qualifications of teachers, the subjects to be taught therein are all within its control. In *Attorney General* v. *Lowrey,* 131 Mich 639, 644, it was said:

" 'The school district is a State agency. Moreover, it is of legislative creation. It is true that it was provided for in obedience to a constitutional requirement; and, whatever we may think of the right of the district to administer in a local way the affairs of the district under the Constitution, we cannot doubt that such management must be in conformity to the provisions of such laws of a general character as may from time to time be passed, and that the property of the district is in no sense private property, but is public property, devoted to the purposes of the State, for the general good, just as almshouses and courthouses are, although confided to local management, and applied to uses which are in a sense local, though in another sense general.' "

The authority of the legislature with reference to matters pertaining to education has been recognized in other decisions, including *Detroit Board of Education* v. *Superintendent of Public Instruction,* 319 Mich 436, 448, where it was said:

"The power of the legislature with reference to school districts in general has been uniformly regarded as embracing the power to create and alter them, regulate the powers and duties of boards of education, provide for the management of the affairs of such districts, direct and control the system of education of the State, and, in general, exercise with reference thereto the authority of a sovereign State over its governmental agencies."

See, also, *Ira School District* v. *Chesterfield School District,* 340 Mich 678; *Sturgis* v. *County of Allegan,* 343 Mich 209.

This brings us to a consideration of the question whether the legislature, in the present school code, has imposed on defendant the duty to accept for enrollment in its high school nonresident students who are duly qualified to pursue their educational studies therein. Appellants direct attention to the provision found in section 583 of the 1955 code (CL 1948,

§ 340.583 [Stat Ann 1955 Cum Supp § 15.3583]) declaring that a primary district "shall not operate any grades above the eighth," and also to section 731 (CL 1948, § 340.731 [Stat Ann 1955 Cum Supp § 15.3731]) which requires, with certain exceptions not material here, that every parent, guardian, or other person having charge of a child between the ages of 6 and 16 years shall be required to send such child to the public schools during the entire school year. Reliance is also placed on section 761 of the code (CL 1948, § 340.761 [Stat Ann 1955 Cum Supp § 15.3761]) which reads as follows:

"The board of any district which does not maintain grades above the eighth shall pay the tuition of any children of school age, resident of said district, who have completed the studies of the 8 grades, to any school district maintaining a high school which is approved for the collection of high school tuition by the superintendent of public instruction; the board of any district which maintains grades above the eighth which are not approved for the collection of tuition by the superintendent of public instruction may pay the tuition of any children of school age, resident of said district, eligible to attend in those grades not approved, to any district approved for the collection of tuition by the superintendent of public instruction for the grade attended. The board shall pay the expense of daily transportation during school days of children attending high school in another district or districts. The board of a school district maintaining a legal high school as provided in this act shall, when directed by a majority vote of the school electors, discontinue such high school and thereafter such board shall pay the tuition and transportation for its eighth grade graduates. General funds and any surplus moneys in the treasury of said district belonging to the primary fund may be used in paying necessary and authorized tuition."

It will be noted that none of the sections of the code above cited contains a specific requirement that school districts maintaining a high school shall receive therein nonresident pupils who have completed the first 8 grades of school work. The matter of such admission is, in terms, governed by section 582 (CL 1948, § 340.582 [Stat Ann 1955 Cum Supp § 15.-3582]), which provides that:

"The board of any district may admit to the district school nonresident pupils and shall determine the rates of tuition of such pupils and shall collect the same. Tuition for grades kindergarten to 6, inclusive, shall not exceed 25% more than the operation cost per capita for the number of pupils in membership in grades kindergarten to 12, inclusive. Tuition for grades 7 to 12, inclusive, shall not exceed 12-1/2% more than 125% of the operation cost per capita for the number of pupils in membership in grades kindergarten to 12, inclusive. In districts not maintaining grades above grade 8, the tuition shall not exceed 25% more than the operation cost per capita for the number of pupils in membership in grades kindergarten to 8, inclusive. The operation costs and membership so used shall be those of the preceding fiscal year. The per capita cost herein referred to shall not be interpreted to include moneys expended for school sites, school building construction, equipment, payment of bonds, or such other purposes as shall be determined by the superintendent of public instruction not properly included in operation costs."

Defendant insists that the word "may" as used in said section is permissive and grants to the governing board of a school district the right to admit nonresident pupils, subject to the condition specified. In other words, it is the position of defendant that section 582 is a grant of discretionary authority with reference to such admission rather than the imposition of a mandatory duty. On behalf of appellants it

is argued that the pertinent provisions of the school code should be considered together and that the prohibition against a primary school district providing for instruction above the 8th grade, the compulsory school attendance requirement applicable, with exceptions, to children between the ages of 6 and 16, and the duty imposed on school districts not maintaining high schools to pay the tuition and transportation costs of resident pupils desiring to attend high school, should be read in connection with section 582 and as indicating an intent on the part of the legislature that the word "may" should be interpreted as meaning "shall".

We are thus confronted with a question of statutory construction. Obviously the language used is clear and unambiguous. We think it must be assumed that if the legislature had intended to impose a mandatory duty on school districts with reference to the admission of nonresident pupils such intent would have been expressed by the use of appropriate language. In the early case of *People* v. *Blodgett,* 13 Mich 127, 167, 168, 173, Justice COOLEY said:

"There are certain well-settled rules for the construction of statutes, which no court can safely disregard. Where the statute is plain and unambiguous in its terms, the courts have nothing to do but to obey it. They may give a sensible and reasonable interpretation to legislative expressions which are obscure, but they have no right to distort those which are clear and intelligible. The fair and natural import of the terms employed, in view of the subject matter of the law, is what should govern.   *   *   *

"And, believing as I do, that a high and sacred regard for law and constitutional order is being begotten of these times, I regard it as especially important that the judiciary should do nothing to postpone or to check this result by decisions which strain

or bend the meaning of words to meet unexpected emergencies."

In *MacQueen* v. *Port Huron City Commission, supra,* it was said (p 342) that:

"It is a cardinal rule that the legislature must be held to intend the meaning which it has plainly expressed, and in such cases there is no room for construction, or attempted interpretation to vary such meaning."

Among other decisions recognizing and applying the rule that the language of a legislative enactment must be given its ordinary meaning are: *Nordman* v. *Calhoun,* 332 Mich 460; and *Stadle* v. *Township of Battle Creek,* 346 Mich 64.

It will be noted that while the word "may" is used in section 582 with reference to the admission of nonresident pupils the duty to fix rates of tuition in the event of such admission is mandatory. In terms, the legislature vested the board of education of a school district with the discretionary power to admit such students and then imposed the requirement with reference to the tuition rates to be paid thereby. The situation in this respect suggests that had it been intended to impose the requirement that nonresident pupils must be accepted for enrollment the same form of expression would have been used as with reference to the other matter covered. A similar situation was presented in *Dennis* v. *Wrigley,* 175 Mich 621. That case involved a provision of the school law then in effect declaring that a district "may at an annual meeting vote to discontinue school in the district for the ensuing year and determine that the children resident therein shall be sent to another school or schools, and when such action has been taken the school board shall have authority to use any funds, except library funds, in the hands of the treasurer to pay the tuition and transportation

of all such children, and if necessary vote a tax for such purpose." It was recognized that the provision with reference to discontinuing school was permissive in character, but that in the event such power was exercised the duty to furnish transportation to resident pupils enrolling in another school, and to pay tuition therefor, became mandatory. By analogy, it must be said in the instant case that if the board of education of a district exercises the granted authority to admit nonresident pupils the requirement that tuition shall be fixed therefor in accordance with the statute becomes operative.

We are in accord with the finding of the trial judge that under the present school code the defendant school district is not charged with the duty of accepting nonresident pupils. The language of the statute must be construed as it reads. It is not within the province of this Court to read therein a mandate that the legislature has not seen fit to incorporate. Our duty is to apply the law as we find it. *Chapel* v. *School District No. 8, Fractional, Parma Township, Jackson County,* 334 Mich 176, 178. If the school code in its present form results in injustice to the plaintiffs, and to others in like situations, the remedy lies with the legislature.

The decree of the circuit court is affirmed. In view of the nature of the controversy, no costs are allowed.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, VOELKER, KELLY, and BLACK, JJ., concurred.