ENGLISH v SAGINAW COUNTY TREASURER

McKENZIE v SAGINAW COUNTY DRAIN COMMISSIONER

1. Drains—Drain Orders—Reimbursement—General Fund—Drain Fund—Statutes.

   The Drain Code of 1956 does not provide a method for the holders of drain orders to make a demand for reimbursement of such orders from the general fund of a county where the drain fund upon which such orders are drawn is insufficient to pay the orders (MCLA 280.244; MSA 11.1244).

2. Statutes—Amendment—Legislature—Phraseology Changes—Presumptions.

   It is presumed that the Legislature intended to make some change in existing law when the Legislature adopts an amendment to a statute; courts must give some meaning to a legislative amendment; a change of phraseology in a statute raises the presumption that a change of meaning was intended.

3. Drains—Drain Commissioner—Duty of Reassessment—Drain Fund—Mandamus—Statutes.

   A drain commissioner has a duty to reassess in order to make up any deficiency in a drain fund; an action for a writ of mandamus should be directed against the drain commissioner where a holder of unpaid drain orders seeks a reassessment (MCLA 280.245, 280.280; MSA 11.1245, 11.1280).

Appeal from Saginaw, Joseph R. McDonald, J. Submitted November 2, 1977, at Grand Rapids. (Docket Nos. 77–940, 77–941.) Decided March 6, 1978.

Complaints by Volney English and Helen English against the Saginaw County Treasurer, Sagi-

References for Points in Headnotes

[1, 2] 25 Am Jur 2d, Drains and Drainage Districts § 53.

[2] 73 Am Jur 2d, Statutes § 236.

[3] 25 Am Jur 2d, Drains and Drainage Districts, §§ 42, 48.

naw County Clerk and the County of Saginaw and by Basil McKenzie against the above-named defendants, the Saginaw County Drain Commissioner and Charles Nagel seeking writs of mandamus directing defendants to make payment on certain drain orders from the general fund of the county and for other relief. Lamar Corporation was permitted to intervene as a plaintiff. The cases were consolidated for trial. Default judgment for plaintiff McKenzie against Nagel. Summary judgment for plaintiffs. Defendants Saginaw County Treasurer, Saginaw County Clerk and the County of Saginaw appeal. Reversed.

*Montigel, Mackie & Harris,* for plaintiff-appellees English.

*Fortino, Plaxton & Moskal,* for appellee McKenzie.

*Porter, Day & Sawdey* (by *William A. Hubble),* for intervening plaintiff-appellee Lamar Corporation.

*Smith Bovill, P. C.,* for defendant-appellants.

*Amicus Curiae:* County of Wayne, Michigan, *Aloysius J. Suchy,* Corporation Counsel (by *Lawrence O. Hinkle).*

Before: R. M. MAHER, P. J., and M. F. CAVANAGH and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. This appeal involves a rather arcane body of statutory law, The Drain Code of 1921, 1921 PA 64, as amended. On October 2, 1975, Volney and Helen English filed a complaint against the Saginaw County Treasurer, Saginaw County Clerk and County of Saginaw requesting a

writ of mandamus directing defendants to make payment on certain drain orders from the general fund of the county. Lamar Corporation was permitted to intervene as a plaintiff on March 31, 1976.

On April 5, 1976, Basil McKenzie filed a complaint against the above-named defendants, the Saginaw County Drain Commissioner, and Charles Nagel also requesting a writ of mandamus directing defendant county officials to make payment on certain drain orders and for other relief.

On September 16, 1976, the two cases were consolidated for trial. Default judgment for plaintiff McKenzie against Charles Nagel was granted on January 17, 1977. Summary judgment for plaintiffs was granted on February 25, 1977. Defendants Saginaw County Treasurer, Saginaw County Clerk and County of Saginaw appeal as of right.[1]

The relevant facts are not in dispute. During 1969, 1970 and 1971, the Saginaw County Drain Commissioner issued drain orders to pay for the construction of a special assessment drain known as the Herman Extension of the King Street Drain. Plaintiffs English and McKenzie are assignees of drain orders issued to Charles Nagel. Intervening-plaintiff Lamar Corporation is an original holder of drain orders.

The drain orders were drawn upon the Herman Extension Drain Fund. Deposits were made to this fund primarily from special assessment taxes collected from property owners benefitted by the new drain.

Special assessment taxes on a 48-acre portion of land affected by the drain were not paid. The

_____

[1] On April 19, 1977, this Court permitted Wayne County to intervene as amicus curiae on appeal.

property in question was conveyed to the State of Michigan following a tax sale. This property was later conveyed to the County of Saginaw for one dollar.

On May 22, 1972, the Herman Extension Drain Fund became exhausted, leaving the drain orders in question unpaid. Plaintiffs seek payment from the general fund of the county pursuant to MCLA 280.244; MSA 11.1244 of the 1956 drain code, successor to the 1921 drain code.

To determine the validity of plaintiffs' claims, it is necessary to make an historical analysis of the drain code provision in question.

1921 PA 64 explicitly gave a holder of a drain order the right to demand payment from the general fund of the county where the drain fund was insufficient to pay the order and where the lands on which the taxes have become delinquent have been offered for sale. 1921 PA 64 provided in part as follows:

"That the holder of such order may, if he so desires, have the right to require payment thereof out of any moneys in the general fund of the county treasury that may be available, if the drain fund is insufficient for such purpose because of delinquency in the payment of drain taxes after the lands on which the said taxes shall have become delinquent have been offered for sale. In any such case where payment is made by the county treasurer out of the general fund any and all delinquent drain taxes received by said treasurer thereafter shall be credited to the general fund until the same is reimbursed."

In 1933 this provision of the drain law was amended "in such manner as to transfer to the county drain commissioner the right to require payment out of the general fund of the county". *Gerweck v Monroe County Treasurer,* 317 Mich

53, 64; 26 NW2d 864 (1947). The language which had given a holder of a drain order the right to demand payment from the county general fund was deleted. Language was substituted in its place which gave this right to the drain commissioner. (See 1933 PA 216, § 4.)

In 1949, pursuant to 1949 PA 247, the statute was again amended. The language giving the drain commissioner the right to demand payment from the general fund of the county was deleted. Language giving a holder of a drain order the right to demand payment from the county general fund was not reinstated.

The present statute in dispute, MCLA 280.244; MSA 11.1244, provides in part:

" * * * If the drain fund is insufficient for such purpose because of delinquency in the payment of drain taxes after the lands on which the said taxes shall have become delinquent have been offered for sale, in any such case where payment is made by the county treasurer out of the general fund and all delinquent drain taxes received by said treasurer thereafter shall be credited to the general fund until the same is reimbursed. * * * "

It should be noted that while there are cases prior to the 1949 amendment there are none since.[2] *Graves v Bliss,* 235 Mich 364; 209 NW 142 (1926), *Gerweck v Monroe County Treasurer,* 317 Mich 53; 26 NW2d 864 (1947).

---

[2] The only case we could find since 1949 does not deal with the question involved in this case. In *Ray v Mason County Drain Commissioner,* 48 Mich App 559, 560; 210 NW2d 810 (1973), Judge McGREGOR aptly noted:

"At the center of this dispute is the Drain Code of 1956, MCLA 280.1 *et seq.;* MSA 11.1001 *et seq.,* an exceedingly complex statute, the provisions of which apparently are known by few in the profession and understood by far fewer."

We can only say "Amen".

After tracing the various statutes and amendments of the drain act it is clear that until 1949 the Legislature provided that holders of drain orders would be reimbursed by being paid either by the holders themselves making a request from the general fund or the drain commissioner making a request from the general fund. However, this was eliminated and the 1956 act does not have a method for the holders to make a demand on the county. We cannot reinstate the previous method.

As noted in *Jones v Grand Ledge Public Schools,* 349 Mich 1, 11; 84 NW2d 327 (1957):

"The language of the statute must be construed as it reads. It is not within the province of this Court to read therein a mandate that the legislature has not seen fit to incorporate. Our duty is to apply the law as we find it."

Thus, when the Legislature adopts an amendment to a statute, it is presumed that the Legislature intended to make some change in existing law. Courts must give some meaning to a legislative amendment. A change of phraseology in a statute raises the presumption that a change of meaning was intended. *Lawrence Baking Co v Unemployment Compensation Commission,* 308 Mich 198, 205; 13 NW2d 260 (1944).

In this case, plaintiffs can make no demands on the county. Therefore, defendant county and defendant county officials cannot be compelled to satisfy plaintiffs' demands by a writ of mandamus. As the trial court improvidently granted a writ of mandamus, its decision must be reversed.

We sympathize, however, with the apparent dilemma in which the trial court found itself. Finding that plaintiffs should get relief, in granting the

writ, the trial court was motivated by its concern that:

"  *  *  *  a refusal to grant the relief requested by plaintiffs would leave them without a remedy; *  *  *  ".

However, we do not share that concern because we find that MCLA 280.245; MSA 11.1245, in conjunction with MCLA 280.280; MSA 11.1280, provides for a method of reassessment in order to make up any deficiency.[3] There is a duty upon the

[3] MCLA 280.245; MSA 11.1245 reads as follows:

"All drain orders made by the commissioner shall state the services rendered in brief form, shall be numbered and recorded and signed by the commissioner. Such order, when due, shall be presented to the county clerk and he shall immediately ascertain from the county treasurer if the particular fund on which said order is drawn is sufficient to pay said order. If such fund is sufficient, the county treasurer shall so certify on the back of said drain order and the county clerk shall thereupon issue the usual county warrant upon the county treasurer for the payment of said order, taking said order so certified as his voucher. If such particular fund is insufficient when such order is presented for payment, the county treasurer shall so certify upon such order and such order shall then draw interest at the rate of 6% per annum from the date of presentation until such particular fund is sufficient to pay the same, said interest to be computed and paid with the principal out of the proper fund on which it was drawn, when there are sufficient funds to pay the same. The county treasurer shall keep a record in which he shall note each drain order presented for payment on a drain account which was insufficient to pay such order on the date of presentation. He shall note in such record the amount, number, drain account and the date of original presentation for payment. When there are sufficient moneys in the particular drain account to pay the order, plus interest, the county treasurer shall note the date of such sufficiency on such record and shall transfer sufficient moneys to pay such order and interest then due from the particular drain account and drain fund to a drain order redemption fund and the drain order shall cease to earn interest as of that date. Transfers to the drain order redemption fund shall be made in the order of priority in which the drain orders were originally presented for payment. Payment of such orders, including interest earned as provided herein, shall thereafter be made by the county treasurer from the drain order redemption fund. Drain orders at any time during the year in which such drain order becomes due and payable and for a period of 30 days prior to such year shall be accepted for the payment of drainage taxes. The county treasurer shall report to the commissioner the amount paid as interest on any and all such drain orders. The county treasurer shall at the first of

each month furnish the drain commissioner with a report of all drain orders cashed during the preceding month, including the name of the drain upon which the order was drawn, the amount, the number of the order, and the date of payment."

MCLA 280.280; MSA 11.1280 reads as follows:

"If there is not sufficient money in the fund in a particular drain at the time of the maturity of the bonds last to mature, or any drain orders, to pay all outstanding bonds or drain orders with interest, or to reimburse the county for money which it has been obliged to advance pursuant to section 275 of this act, whether such insufficiency is due to the anticipation of installments as provided in section 279, or to failure to sell any lands for delinquent taxes, or to any other cause, it shall be the duty of the commissioner to at once levy an additional assessment as hereinbefore provided in such an amount as will make up the deficiency which shall be spread in not to exceed 7 annual installments; and if the commissioner determines that the entire amount, if spread in 1 year, would be an undue burden or create unnecessary hardship, he may order it spread over any number of years up to but not exceeding 7; and in case bonds or other evidences of indebtedness are issued pursuant to Act No. 13 of the Public Acts of 1932, First Extra Session, as amended, and Act No. 202 of the Public Acts of 1943, as amended, being sections 131.1 to 138.2, inclusive, of the Compiled Laws of 1948, to refund the outstanding indebtedness of a drain district, the governing body of such drain district shall provide, subject to the directions of the municipal finance commission, for such additional levies of assessments prior to the maturity of such refunding obligations as it shall deem necessary to prevent default in payment of interest on such obligations, and the maintenance of a sinking fund for their retirement, and it shall be the duty of every officer charged with the determination of the amount of taxes to be raised, or the levying of such taxes, to make or cause to be made the additional levies as provided. Any surplus remaining after the payment of the bonds and interest shall remain in the county treasury and be used for the maintenance of the drain.

"Such additional assessments shall only apply to drain orders or bonds issued after the effective date of this act and shall be apportioned, assessed, levied and collected as provided in the first instance. As to deficiency assessments levied for drain orders or bonds issued after the date of this act there shall be no lands exempted therefrom, except those which at the time of such additional assessments are owned or used as follows: First, lands owned by the United States; second, lands owned by the state of Michigan, except licensed homestead lands, and except lands held under land contracts issued pursuant to Act No. 155 of the Public Acts of 1937, as amended, being sections 211.351 to 211.364, inclusive, of the Compiled Laws of 1948; third, lands owned by any county, city, village, township or school district and used for public purposes; fourth, lands used exclusively for burial grounds; fifth, lands dedicated to the public and actually used as a highway or alley, and not used for gain: Provided, That no such additional assessment shall be levied or collected for the purpose of paying the principal or interest upon any bonds or obligations which have heretofore been held to be invalid, nor shall any such

drain commissioner to reassess, at some point, in order to make up the deficiency.

We note that in this case reassessment is made more difficult by the second part of MCLA 280.280; MSA 11.1280 which exempts counties from paying any assessment on property used for public purposes.

We specifically do not decide whether the property acquired by the county from the state for $1 is used for public purposes and therefore cannot be assessed. We suggest that immediately prior to reassessing the property (whenever that occurs) in order to make up the deficiency, the public purpose question be decided first. This would comply with the statutory mandate of MCLA 280.280; MSA 11.1280. In that way if the property that the county owns is not assessed under MCLA 280.280; MSA 11.1280, the other people who are assessed will make up the difference, and a single reassessment will suffice. On the other hand, if this question is not decided and it is later found that the county is not liable, another assessment under the provisions of MCLA 280.245; MSA 11.1245 and MCLA 280.280; MSA 11.1280 would be required.

We would finally note that it appears that plaintiffs started their action against the wrong parties. The action for mandamus should be started against the drain commissioner to reassess. While we can understand and sympathize with the trial court's dilemma, we must administer the statute the way it reads.

Reversed. No costs, a public question being involved.

---

additional assessment be apportioned, assessed, levied or collected for the purpose of paying any bonds, interest or obligations for the payment of which assessments have heretofore been made."