WALEN v DEPARTMENT OF CORRECTIONS

Docket No. 92566. Argued May 4, 1993 (Calendar No. 7). Decided
    August 17, 1993.

    Raymond C. Walen, Jr., a prison inmate, requested permission
        under the Freedom of Information Act to inspect certain final
        orders and decisions of the Department of Corrections pertain-
        ing to disciplinary hearings, as well as the records on which the
        decisions were made. After the department denied his request,
        he brought an action in the Ingham Circuit Court, seeking to
        compel the department to permit inspection. The court, James
        R. Giddings, J., granted summary disposition for the depart-
        ment, holding that the FOIA did not apply to department
        disciplinary hearings and that only an affected prisoner was
        entitled to copies of materials pertaining to a disciplinary
        proceeding. The Court of Appeals, JANSEN and GRIBBS, JJ.
        (SHEPHERD, P.J., dissenting), affirmed, holding that such hear-
        ings were exempted from publication by the Administrative
        Procedures Act (Docket No. 116548). The plaintiff appeals.

    In an opinion by Chief Justice CAVANAGH, joined by Justices
        BRICKLEY, BOYLE, GRIFFIN, and MALLETT, the Supreme Court
        held:

    The Freedom of Information Act applies to Department of
        Corrections disciplinary hearings.

    1. The FOIA, § 11(1)(a), requires state agencies to publish and
        make available to the public final orders or decisions in con-
        tested cases and the records on which they were made. The
        APA, chapter 1, defines "contested case" as a proceeding in
        which a determination of the legal rights, duties, or privileges
        of a party is required by law to be made by the agency after an
        opportunity for an evidentiary hearing. The Department of
        Corrections handbook provides that the department must con-
        duct hearings that may result in the loss of a right by a
        prisoner. A prison disciplinary hearing falls within the defini-
        tion of "contested case."

    2. By allowing department disciplinary hearings to remain

REFERENCES

Am Jur 2d, Courts §§ 61, 62; Records and Recording Laws § 19.
What constitutes an agency subject to application of state freedom
    of information act. 27 ALR4th 742.

subject to the definition of "contested case" for purposes of the APA, the Legislature also intended to allow such hearings to remain subject to § 11 of the FOIA. Although the intent underlying the requiring of publication of final orders and decisions and the intent underlying the requiring that the subject of a hearing receive a copy of the proceedings differ, the distinction does not suggest an intent to exempt department disciplinary hearings from the FOIA. The Court of Appeals erred in holding that by removing disciplinary hearings from certain chapters of the APA, the Legislature intended to alter the definition of "contested case."

3. The publication requirement of § 11 permits final orders and decisions in written form to be retained in prisoner files. Nonetheless, public access to the documents must be allowed under § 3. Therefore, remand to the circuit court is required for a determination whether the request under § 3 is sufficiently descriptive, in light of the doubtless extensive redaction that will be required by § 13, to permit the department to find the records. If not, the request should be denied.

Reversed and remanded.

Justice RILEY, joined by Justice LEVIN, concurring in part and dissenting in part, stated that § 11 of the FOIA unambiguously provides that a state agency must publish and make available to the public certain records. The analysis of the majority distorts the common meaning of "publish" by interpreting it to mean the mere retention of records. No general or legal source defines publish so narrowly. It further misconstrues "make available to the public" to mean solely in the manner delineated in § 3. No such limitation appears in § 11 or elsewhere in the FOIA. Rather, the FOIA permits public review of records through specific searches under §§ 3 and 5 and through general research under § 11.

189 Mich App 373; 473 NW2d 722 (1991) reversed.

PRISONS AND PRISONERS — DISCIPLINARY HEARINGS — FREEDOM OF INFORMATION ACT — ADMINISTRATIVE PROCEDURES ACT.
The Freedom of Information Act applies to Department of Corrections disciplinary hearings (MCL 15.241[1][a], 24.203[3]; MSA 4.1801[11][1][a], 3.560[103][3]).

Prison Legal Services of Michigan, Inc. (by *Sandra Girard*), for the plaintiff.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Irene M. Mead*, Assistant

Attorney General, and *Susan B. Moody-Frezza,* Assistant Attorney General, for the defendant.

CAVANAGH, C.J. This case involves the Freedom of Information Act (FOIA),[1] the Administrative Procedures Act (APA),[2] and the Department of Corrections Act (DOCA).[3] We are asked to determine whether the FOIA applies to Department of Corrections disciplinary hearings. The FOIA covers any "contested case," as defined by the APA. The hearing handbook's[4] definition of department disciplinary hearings falls within the APA definition of "contested case." In its brief to this Court, the department states that it "does not contest that a prison disciplinary hearing meets the parameters" of the APA definition. The Court of Appeals held that because the APA, § 115,[5] exempts department

[1] MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.*

[2] MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*

[3] MCL 791.201 *et seq.*; MSA 28.2271 *et seq.*

[4] "Hearing handbook" is the commonly used name for chapter IIIA of the DOCA and it sets forth the department's hearing procedures. MCL 791.251 *et seq.*; MSA 28.2320(51) *et seq.*

[5] MCL 24.315; MSA 3.560(215), which provides:

> Chapters 4 and 6 shall not apply to proceedings conducted under the worker's disability compensation act of 1969, Act No. 317 of the Public Acts of 1969, as amended, being sections 418.101 to 418.941 of the Michigan Compiled Laws. Chapters 4 and 8 shall not apply to a hearing conducted by the department of corrections pursuant to chapter IIIA of Act No. 232 of the Public Acts of 1953, being sections 791.251 to 791.255 of the Michigan Compiled Laws. Chapter 8 shall not apply to a contested case or other proceeding regarding the granting or renewing of an operator's or chauffeur's license by the secretary of state; the Michigan employment relations commission; worker's disability compensation act under Act No. 317 of the Public Acts of 1969; or unemployment compensation under Act No. 1 of the Public Acts of the Extra Session of 1936, being sections 421.1 to 421.73 of the Michigan Compiled Laws; or to department of social services public assistance hearings under section 9 of Act No. 280 of the Public Acts of 1939, being section 400.9 of the Michigan Compiled Laws.

disciplinary hearings from the APA, chapters 4 and 8, the hearings are exempt from the APA's definition of "contested case." Therefore, the FOIA does not apply. We hold that the Freedom of Information Act does apply to Department of Corrections disciplinary hearings.

I

Pursuant to MCL 15.233(1); MSA 4.1801(3)(1), plaintiff, a Michigan prisoner, requested permission to inspect various final orders and decisions of the Department of Corrections hearings and records on which the decisions were made. Plaintiff instituted the present action after the department denied his request. The trial court granted defendant's motion for summary disposition, holding that the FOIA publication requirement did not apply to department disciplinary hearings, and that only the affected prisoner could mandate a copy of the proceeding.[6]

The Court of Appeals affirmed in a two to one decision,[7] holding that the Legislature exempted disciplinary hearings from the publication requirement when it enacted MCL 24.315; MSA 3.560(215). We granted leave to appeal and now reverse.

II

A review of the statutes shows that the FOIA applies to department disciplinary hearings. Because the statutes do not conflict, and the language is plain and unambiguous, interpreting the

[6] The trial judge based his decision on MCL 791.252(k); MSA 28.2320(52)(k).

[7] 189 Mich App 373; 473 NW2d 722 (1991).

statutes is unnecessary.[8] *Jones v Grand Ledge Public Schools,* 349 Mich 1, 9-10; 84 NW2d 327 (1957). See also *Gilroy v General Motors Corp (After Remand),* 438 Mich 330, 341; 475 NW2d 271 (1991).

A

We must first examine the FOIA provisions[9] that require disclosure of records to the public. The FOIA, § 11(1)(a),[10] requires state agencies to "publish and make available to the public all of the following: (a) Final orders or decisions in contested cases and the records on which they were made." The FOIA does not define the term "contested case," but defers to the term's meaning as ascribed in the APA, chapters 1 through 7.[11]

The APA, chapter 1, defines "[c]ontested case" as "a proceeding, . . . in which a determination of the legal rights, duties, or privileges of a named party is required by law to be made by an agency

[8] If the statutes did conflict, it would be this "Court's duty to read the statutes together to avoid rendering any provision meaningless." *Nelson v Transamerica Ins Services,* 441 Mich 508, 513; 495 NW2d 370 (1992).

[9] Although not raised in this Court, we note that MCL 15.233(1); MSA 4.1801(3)(1) requires a "public body," defined in MCL 15.232(b); MSA 4.1801(2)(b), to permit a person to "inspect, copy, or receive copies of a public record of a public body, except as otherwise expressly provided by section 13." The department.is a public body under the FOIA. The trial court must determine whether the records are exempt under § 13, however. The trial court also must consider whether plaintiff submitted a request that "describes the public record sufficiently to enable the public body to find the public record . . . ." MCL 15.233(1); MSA 4.1801(3)(1).

[10] MCL 15.241(1)(a); MSA 4.1801(11)(1)(a).

[11] MCL 15.241(6); MSA 4.1801(11)(6) provides:

As used in this section, "state agency," "contested cases," and "rules" shall have the same meanings as ascribed to those terms in Act No. 306 of the Public Acts of 1969, as amended, being sections 24.201 to 24.315 of the Michigan Compiled Laws.

after an opportunity for an evidentiary hearing."[12] The hearing handbook explains that the department must conduct all hearings that "may result in the loss by a prisoner of a right . . . ."[13] The department admits and the Court of Appeals held that "a prison disciplinary case falls within the definition of a 'contested case.' " 189 Mich App 373, 376; 473 NW2d 722 (1991). We agree.

The APA, chapter 8, § 122,[14] states that for purposes of chapter 8, a contested case "does not include a case that is settled or a case in which a consent agreement is entered into or a proceeding for establishing a rate or approving, disapproving, or withdrawing approval of a form." Chapter 8, however, does not apply here. The FOIA only requires the court to apply the definition of "contested case" as used in the first seven chapters of the APA. Additionally, the APA, chapter 7, § 115, states that department disciplinary hearings are exempt from chapter 8 of the APA.

The remaining provisions of the APA do not redefine "contested case," but merely defer to the chapter 1 definition. If the Legislature intended to define "contested case" for department disciplinary hearings differently from the express APA definition, then the Legislature could have adopted explicit language expressing that intent or amending MCL 15.241(6); MSA 4.1801(11)(6). See *Gordon Sel-Way, Inc v Spence Bros, Inc,* 438 Mich 488, 506; 475 NW2d 704 (1991).

B

The APA, chapter 7, § 115, also exempts department disciplinary hearings from the APA's con-

---

[12] MCL 24.203(3); MSA 3.560(103)(3).

[13] MCL 791.251(2); MSA 28.2320(51)(2).

[14] MCL 24.322(1); MSA 3.560(222)(1).

tested case procedures, chapter 4. Although exempt from those procedures, department disciplinary hearings are not exempt from the *definition* of "contested case." We believe the Legislature intended only to remove department disciplinary hearings from the APA's procedural requirement for contested cases. This is evidenced by the fact that such hearings are not exempt from the remaining chapters of the APA. The Court of Appeals recognized that the hearings are subject to chapter 6 of the APA, which applies only to a "contested case:"

> When a person has exhausted all administrative remedies available within an agency, and is aggrieved by a final decision or order in a *contested case,* whether such decision or order is affirmative or negative in form, the decision or order is subject to direct review, by the courts as provided by law. [MCL 24.301; MSA 3.560(201). Emphasis added.]

Since department disciplinary hearings are subject to chapter 6, it must be because they are "contested cases."[15]

The Court of Appeals believes "that the reason the Legislature did not simply define 'contested cases' as not including prison disciplinary hearings was the fact that for the purposes of judicial review, the APA still applied. However, this is not true for disclosure requirements." 189 Mich App 377. There is no evidence that would draw this Court to that conclusion. We will not hold that department disciplinary hearings meet the defini-

---

[15] Chapter 6, § 101, also makes an indirect reference to the separate disciplinary hearing procedures set forth in the hearing handbook, by stating that "[e]xhaustion of administrative remedies does not require the filing of a motion or application for rehearing or reconsideration unless the agency rules require the filing before judicial review is sought." The hearing handbook does require a motion for resentencing before seeking judicial review.

tion of a "contested case" for one provision, but not another, absent evidence that the Legislature intended that result. The House Legislative Analysis, HB 4105, June 19, 1979, does not suggest that removing department disciplinary hearings from the FOIA was even considered:

> The manner in which these disciplinary hearings are conducted has been the subject of a great deal of controversy in recent years, and the issue of how best to structure the hearings has been highlighted by a recent Michigan Court of Appeals decision. In that decision, *Lawrence v Michigan Department of Corrections* [88 Mich App 167; 276 NW2d 554 (1979)], the court ruled that disciplinary hearings in Michigan correctional facilities fall within the definition of contested cases in the Administrative Procedures Act (A.P.A.), and must be conducted according to its provisions. These provisions include a number of rights which have not been part of the department's disciplinary hearings policy, such as the right to counsel, and the right to cross-examine witnesses. Many people feel that some of the A.P.A. requirements are inappropriate to the prison disciplinary hearings process.

The Legislature refused to exempt department disciplinary hearings from the APA altogether[16] because "the quality of prison disciplinary hearings could be improved by incorporating some of the A.P.A. due process provisions."[17] *Id.* By allowing department disciplinary hearings to remain subject to the definition of "contested case" for pur-

---

[16] The *Lawrence* Court also invited legislative action by emphasizing that its "ruling here is necessitated by the nature of our judicial function. We urge the Legislature, however, to consider the practical effect of the necessary application of the statute." *Id.* at 174.

[17] Furthermore, the Court of Appeals reasoning is not convincing in light of § 115's explicit exemption of prison disciplinary hearings from chapters 4 and 8. There would be no need for § 115 if the Legislature intended only chapter 6 of the APA to apply.

poses of the APA, the Legislature also intended to allow the hearings to remain subject to § 11 of the FOIA. It is a well-known principle that the Legislature is presumed to be aware of, and thus to have considered the effect on, all existing statutes when enacting new laws. *Malcolm v East Detroit,* 437 Mich 132, 138; 468 NW2d 479 (1991).

A recent amendment to the DOCA also provides evidence that the Legislature did not intend to exempt department disciplinary hearings from the FOIA. MCL 791.230; MSA 28.2300 specifically describes prison-related documents that are exempt from disclosure under the FOIA if requested by or on behalf of a prisoner. Exempt items include log books and daily reports of department employees, staffing charts and daily assignment sheets. Final orders or decisions of prison disciplinary hearings are not exempt under this section.[18] If the Legislature intended to exempt final orders or decisions, then those items could certainly have been included in the list of exempted material.

C

The Court of Appeals also suggests that the "creation of the procedure to obtain information on prison misconduct hearings evidences the legislative intent that prison misconduct hearings are not 'contested cases' for the purposes of the FOIA." 189 Mich App 377. We disagree. The procedure to which the Court of Appeals referred is exclusively for the prisoner who was the subject of the hearing. The hearing handbook requires sending a copy of the decision to the subject of the hearing. It also requires the decision to be posted for the reporting officer to examine. The FOIA does not discuss send-

---

[18] Some information contained in the final orders and decisions may need to be redacted if it pertains to exempt material. See MCL 15.244; MSA 4.1801(14).

ing a copy to the subject of the hearing, but applies to the general public.

Together, the provisions ensure that the subject of the hearing automatically receives a copy and that the records are made available to the public, unless otherwise exempt from disclosure. The intent behind requiring publication to the public and requiring the subject of the hearing to receive a copy differ, but the distinction does not suggest an intent to exempt department disciplinary hearings from the FOIA.

### III

Defendant requests prospective application of our decision because retrieving the requested documents would be an onerous task.[19] We stated in *Washtenaw Co v State Tax Comm,* 422 Mich 346, 378-379; 373 NW2d 697 (1985), that a "considerable administrative burden" can justify limiting a holding to a prospective application.

Whether there is an onerous burden in this case cannot be determined until after the trial court decides whether the records are exempt by any provision within the FOIA. Only then can it be determined what course of action the department would be required to take and whether that action creates an onerous burden.

### A

Section 11 of the FOIA compels the Department

---

[19] The department has explained that the final orders and decisions from prison disciplinary hearings are not centrally filed. Instead, if the final determination of the hearing officer is that the prisoner is guilty of a disciplinary infraction, that record is placed in the prisoner's individual file. If it is determined that the prisoner is not guilty of a disciplinary infraction, the hearing report is maintained by the presiding hearing investigator for two years. Because plaintiff requested numerous files, the burden of locating the files would be onerous.

of Corrections to "publish and make available to the public" the final orders and decisions of disciplinary hearings. Section 11 explicitly defines the term publish:

> Publications may be in pamphlet, looseleaf, or other appropriate form in printed, mimeographed, or other written matter.

"[M]ake available to the public" simply means that members of the public can obtain access to documents required to be published by following the procedures set forth in § 3. In short, § 11 describes what is to be published and the acceptable form of publication, while § 3 describes the rights and opportunities publication creates.[20]

The FOIA is composed of eleven sections,[21] each serving as a piece of the FOIA puzzle. Section 3 explains how a person may utilize his right to *inspect* the public record, but explicitly "does not require a public body to create a new public record, except as required in sections 5 and 11 . . . ." MCL 15.233(3); MSA 4.1801(3)(3). Only these sec-

---

[20] We reject the Court of Appeals conclusion that § 3 and § 11 have distinct inspection requirements.

> In contrast to § 3, [§ 11] does not require a specific oral or written request. Thus, unless made exempt by another provision of the act, the insurance bureau is required to make available for public consumption those documents submitted by Blue Cross in support of its contested rate adjustment petition. [*Blue Cross & Blue Shield of Michigan v Ins Bureau,* 104 Mich App 113, 127-128; 304 NW2d 499 (1981).]

The Court of Appeals holding is unsound and fails to appreciate both the structure of the FOIA and its explicit language.

[21] Section 1, MCL 15.231; MSA 4.1801(1); § 2, MCL 15.232; MSA 4.1801(2); § 3, MCL 15.233; MSA 4.1801(3); § 5, MCL 15.235; MSA 4.1801(5); § 6, MCL 15.236; MSA 4.1801(6); § 10, MCL 15.240; MSA 4.1801(10); § 11, MCL 15.241; MSA 4.1801(11); § 13, MCL 15.243; MSA 4.1801(13); § 13a, MCL 15.243a; MSA 4.1801(13a); § 14, MCL 15.244; MSA 4.1801(14).

tions, and primarily § 11, require a state agency to create a public record. It follows from the structure of the statute that § 11, which offers no explanation about how inspection will take place, is essentially concerned with compelling agencies to create certain records. A contrary construction would render § 3 meaningless.[22]

The Department of Corrections conceded in its brief that the requested final orders and decisions are in written form and are retained in prisoner files. The § 11 publication requirement permits records to be maintained in such written form, thus the agency has satisfied the publication requirement. Nonetheless, the agency still must allow the public access to the documents pursuant to § 3.[23] Therefore, on remand, the question should be whether the prisoner's § 3 request is sufficiently descriptive to allow the Department of Corrections to find the desired public record in light of the extensive redaction the § 13 exemptions will doubtlessly require.[24] If the request is not sufficiently

[22] After plaintiff commenced this action, originally entitled *Walen v Boyd,* Docket No. 86-55731-AW, David Desorcy moved to intervene, naming the Department of Corrections as the defendant. Mr. Desorcy sought actual *publication* of department disciplinary hearings and not merely the right to inspect the documents. Although Mr. Desorcy appealed his claim in the Court of Appeals, he did not appeal in this Court. Nonetheless, the department remains the defendant. Defendant does not challenge that decision, but does challenge the nature of plaintiff's appeal. Plaintiff argues on appeal that the records should be disclosed pursuant to the publication requirement, MCL 15.241(1); MSA 4.1801(11)(1), but in his complaint he only argued he had the right to inspect the documents, MCL 15.233; MSA 4.1801(3). It was Mr. Desorcy who originally filed a complaint pursuant to § 11. In light of today's ruling, the department's challenge to the form of plaintiff's appeal is irrelevant.

[23] The dissents' debate regarding the definition of publish is not helpful in this case because the FOIA defines publish for us. Furthermore, the dissent fails to realize that its broad dictionary definition of publish renders the phrase "make available to the public" unnecessary, because the dictionary definition of publish encompasses being available to the public.

[24] The trial court must determine whether the records requested are otherwise exempt from disclosure. For example, the records may

descriptive, the prisoner's request should be denied. MCL 15.235; MSA 4.1801(5).

IV

The Court of Appeals erred in holding that by removing Department of Corrections disciplinary hearings from certain chapters of the APA, the Legislature intended to alter the definition of the term "contested case." Accordingly, we reverse the judgment of the Court of Appeals and remand this case for further proceedings consistent with this opinion.

BRICKLEY, BOYLE, GRIFFIN, and MALLETT, JJ., concurred with CAVANAGH, C.J.

RILEY, J. (*concurring in part and dissenting in part*). I agree with the majority's finding that the Michigan Freedom of Information Act[1] applies to Department of Corrections disciplinary hearings and join in that holding. However, because the majority eviscerates § 11 of the FOIA by holding that it does not permit public access to records

be exempt from disclosure for failure to comply with the FOIA requirements for submitting a request. The records also might be exempt under § 13 for one or more reasons listed, such as:

(a) Information of a personal nature where the public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy.

\* \* \*

(c) A public record which if disclosed would prejudice a public body's ability to maintain the physical security of custodial or penal institutions occupied by persons arrested or convicted of a crime or admitted because of a mental disability, unless the public interest in disclosure under this act outweighs the public interest in nondisclosure.

(d) Records or information specifically described and exempted from disclosure by statute.

[1] MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.*

independent of § 3 of the FOIA, I respectfully dissent.

## I

Even before the enactment of the FOIA, "Michigan had an established history of requiring public agency disclosure . . . ." *Evening News Ass'n v Troy,* 417 Mich 481, 494-495; 339 NW2d 421 (1983). In *Nowack v Auditor General,* 243 Mich 200, 203-204; 219 NW 749 (1928), this Court explained that the citizens of Michigan possess a common-law right to access government documents:

> If there be any rule of the English common law that denies the public the right of access to public records, it is repugnant to the spirit of our democratic institutions. Ours is a government of the people. Every citizen rules. . . . Undoubtedly, it would be a great surprise to the citizens and taxpayers of Michigan to learn that the law denied them access to their own books for the purpose of seeing how their money was being expended and how their business was being conducted. There is no such law and never was either in this country or in England. Mr. Justice MORSE was right in saying:
> "I do not think that any common law ever obtained in this free government that would deny to the people thereof the right of free access to, and public inspection of, public records." *Burton v Tuite,* 78 Mich 363, 374 (7 LRA 73) [44 NW 282 (1889)].
> There is no question as to the common-law right of the people at large to inspect public documents and records. The right is based on the interest which citizens necessarily have in the matter to which the records relate.[2]

[2] See also *Int'l Business Machines Corp v Dep't of Treasury,* 71 Mich App 526, 542; 248 NW2d 605 (1976).

The FOIA was enacted to continue this tradition of openness:

> It is the public policy of this state that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act. The people shall be informed so that they may fully participate in the democratic process. [MCL 15.231(2); MSA 4.1801(1)(2).]

Hence, the FOIA mandates disclosure and publication of public records. Section 3(1) of the act, in pertinent part, mandates:

> Upon an oral or written request which describes the public record sufficiently to enable the public body to find the public record, a person has a right to inspect, copy, or receive copies of a public record of a public body, except as otherwise expressly provided by section 13.[3]

Section 5[4] delineates the specific mechanics of obtaining a § 3 request, and provides that members of the public may file an action in circuit court, pursuant to § 10 of the act,[5] to compel an agency to disclose records when in violation of §§ 3 and 5.

---

[3] The section continues:

This act does not require a public body to make a compilation, summary, or report of information, except as required in section 11.

This act does not require a public body to create a new public record, except as required in sections 5 and 11, and to the extent required by this act for the furnishing of copies, or edited copies pursuant to section 14(1), of an already existing public record. [MCL 15.233(3); MSA 4.1801(3)(3).]

[4] MCL 15.235; MSA 4.1801(5).
[5] MCL 15.240; MSA 4.1801(10).

Furthermore, § 11 mandates that "[a] state agency shall publish and make available to the public" public records.[6] Such publication "may be in pamphlet, looseleaf, or other appropriate form in printed, mimeographed, or other written matter." Not unlike § 5, § 11 authorizes a cause of action "to compel a state agency to comply with this section."

As found by the majority, disciplinary hearings by the Department of Corrections clearly fall within the FOIA's mandate of public access. The majority also found that " 'make available to the public' simply means that members of the public can obtain access to documents required to be published by following the procedures set forth in § 3. In short, § 11 describes what is to be published and the acceptable form of publication, while § 3 describes the rights and opportunities publication creates." *Ante* at 250.

## II

### A

The role of this Court regarding statutory analysis is to determine and enforce the Legislature's intentions. *People ex rel Platt v Oakland Co Bank,* 1 Doug 282, 287 (Mich, 1844). Because the Legislature is presumed to understand the meaning of its statutes, "[s]tatutory analysis necessarily begins with the wording of the statute itself." *Carr v General Motors Corp,* 425 Mich 313, 317; 389 NW2d 686 (1986). Each word of an act, therefore, is "presumed to be made use of for some purpose," and "so far as possible, effect must be given to every clause and sentence." *Univ of Michigan Bd of Regents v Auditor General,* 167 Mich 444, 450;

---

[6] MCL 15.241(1); MSA 4.1801(11)(1).

132 NW 1037 (1911).[7] Moreover, unless circumstances dictate otherwise,[8] the Court should utilize the common understanding of words and phrases. *Oakland Co Bank, supra.*[9] Accordingly, the Court may not substitute or redefine a word. *People v Crucible Steel Co of America,* 150 Mich 563, 567; 114 NW 350 (1907).[10] Thus, a cardinal rule of statutory construction is that "[l]egislative intent is to be derived from the actual language of the statute, and when the language is clear and unambiguous, no further interpretation is necessary." *Storey v Meijer, Inc,* 431 Mich 368, 376; 429 NW2d 169 (1988).[11] Hence, "[p]ossible or even probable meanings, when one is plainly declared in the instrument itself, the courts are not at liberty to search for elsewhere." 1 Cooley, Constitutional Limitations (8th ed), pp 125-127.

[7] See also *Stowers v Wolodzko,* 386 Mich 119, 133; 191 NW2d 355 (1971) ("[e]very word should be given meaning and no word should be treated as surplusage or rendered nugatory if at all possible").

[8] For instance, if a statute defines a term, the statute's definition must be followed. See, e.g., MCL 15.232(a), (b), (c); MSA 4.1801(2)(a), (b), (c) (defining, inter alia, "[p]erson," "[p]ublic body," and "[p]ublic record" for FOIA purposes). Similarly, when a legal term of art is utilized, then the technicalities of that term should be referenced. Cf. 1 Cooley, Constitutional Limitations (8th ed), p 132 (noting that legal terms in constitutions must be interpreted in light of their history).

[9] See also Cooley, n 8 *supra* at 130.

[10] We cannot assume the legislature made a mistake and used one word when it in fact intended to use another. The language of the statute is plain as it reads and we do not feel authorized to change its meaning by substituting another word for the one the legislature used.

[11] Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction. [*Fisher v Fisher,* 6 US 358 (2 Cranch) 399; 2 L Ed 304 (1805), quoted in Cooley, n 8 *supra* at 125. See also *Sam v Balarado,* 411 Mich 405, 417-418; 308 NW2d 142 (1981); *Jones v Grand Ledge Public Schools,* 349 Mich 1, 9; 84 NW2d 327 (1957); *People ex rel Twitchell v Blodgett,* 13 Mich 127, 167 (1865) (COOLEY, J.).]

If, however, the plain meaning of a statutory provision is unclear, then legislative intent may be determined by an examination of the statute's purpose, *In re Forfeiture of $5,264,* 432 Mich 242, 248; 439 NW2d 246 (1989), as well as the entirety of the statute's structure and framework. *Joslin v Campbell, Wyant & Cannon Foundry Co,* 359 Mich 420, 426; 102 NW2d 584 (1960).

B

The unambiguous language of § 11 provides that "[a] state agency shall publish and make available to the public" certain records. The majority's analysis distorts the common meaning of "publish" by interpreting it as the mere retention of records. *Ante* at 250. If the Legislature intended to so tailor § 11, it certainly could have utilized more precise terms such as "store," "maintain," "keep," or "retain." The Legislature, however, chose and enacted the term "publish." Because the Legislature did not define "publish" in its definition section of the FOIA,[12] an examination of its common meaning is appropriate. *The Random House Dictionary of the English Language: Second Unabridged Edition,* p 1563, defines "publish" as: "to issue (printed or otherwise reproduced textual or graphic material, computer software, etc.) for sale or distribution to the public," "to issue publicly the work of," "to announce formally or officially; proclaim; promulgate," and "to make publicly or generally known."[13] Similarly, *Roget's International Thesaurus* (New York: 1961), 531.7 publication, p 363, notes "propagate, promulgate, circu-

---

[12] MCL 15.232; MSA 4.1801(2). Contrary to the assertions of the majority, "publish" is not defined by the act, only the acceptable modes of publication.

[13] Dictionary definitions from the era of the FOIA's enactment do not differ substantively.

late, spread, spread about *or* abroad, broadcast, diffuse, disseminate," "divulge," "make known, make public," "put forth," "issue," "declare," "announce," "proclaim," et al., in the primary listing for the term. Common legal definitions do not differ. For instance, Black's Law Dictionary (6th ed), p 1233, includes "[t]o make public; to circulate; to make known to people in general," "[t]o issue; to put into circulation," "[a]n advising of the public or making known of something to the public for a purpose." The vast array of legal authorities compiled in Corpus Juris Secundum concur.[14] None of these sources define the term as mere storage or retention. The common understanding of "publish" certainly includes at least the production of information that is readily available for public review, if not the outright binding or distribution of materials for public consumption.

More important, the majority misconstrues "make available to the public" to mean "make available to the public as solely delineated in § 3."[15] No such limitation exists in the statutory

---

[14] As commonly understood, the word "publish" means to give to the public. While the meaning of the term may depend on the subject with which it is connected, it has been said that the word is usually associated with printing by pamphlet or newspaper.

"Publish" is defined as meaning to make public, to make public in a newspaper, book, circular, or the like; to make public announcement of; to bring before the public, as for sale or distribution; to make known; to make known to people or mankind in general; to disclose, reveal. The term is further defined as meaning to print, or cause to be printed, and to issue from the press, either for sale or general distribution, as a book, newspaper, piece of music, engraving, etc.

       *   *   *

"Publish" is also defined as meaning to circulate; to put into circulation; to put in general circulation; to disseminate; to issue; to advertise; to utter. [73 CJS 551-552. Citations omitted.]

[15] The majority correctly notes that § 11 mandates that "agencies . . . create certain records," *ante* at 251, and that many

language of § 11 or elsewhere in the FOIA. Each
section is independent, and neither refers to the
other for definition—there simply is no statutory
language to justify intertwining the sections.[16]
Moreover, examining the statute as a whole, the
majority's interpretation of § 3 renders the phrase
superfluous: §§ 3 and 5 already ensure that records
are available to the public through a specific re-
quest to a governmental agency. Furthermore,
both §§ 3 and 11 provide for a cause of action to
compel an agency to disclose information unlaw-
fully withheld from the public, evidencing a
scheme intended to grant § 11 an independent
mechanism for public access to documents.

The public, therefore, may gain public access to
public records independent of § 3 by obtaining
documents published as mandated under § 11.
Hence, the FOIA permits public review of records
in two fashions: (1) through a specific search utiliz-
ing §§ 3 and 5, and (2) through general access
utilizing § 11. A member of the public may gather
information through a § 3 request that relates to a
specific person or topic, or he may perform wide-
ranging general research by examining materials
published through § 11. For example, a reporter
wishing to gather information regarding the DNR's
activities regarding Detroit's Belle Isle could file a
§ 3 FOIA request specifically asking for such infor-
mation. On the other hand, another reporter wish-
ing to thoroughly research DNR practices, perhaps
to search for a pattern of corruption or abuse,[17]
could examine published materials via § 11. Con-

different methods of complying with the publication requirement
exist.

[16] When one section of the FOIA is defined by another, the FOIA often
specifically refers to that other section. See, e.g., the explicit reference
in § 5 to § 10 procedures.

[17] As a hypothetical, I do not mean to suggest that such a pattern
exists.

trary to the assertions of the majority, this construction of the statute does not render § 3 meaningless. In fact, this interpretation is the only one that maintains the integrity of both sections by preserving the meaning of the phrase "publish and make available to the public."

Furthermore, the majority's interpretation conflicts with the broad mandate of the FOIA, which is to ensure that "all persons are entitled to full and complete information regarding the affairs of government . . . so that they may fully participate in the democratic process."[18] The inability of a citizen to formulate a specific § 3 request should not deny him the ability to examine records, otherwise government practices unknown to the general populace could never be exposed to public scrutiny because no member of the general public could possess the exact knowledge to formulate a specific § 3 request.[19]

Hence, I respectfully dissent.

LEVIN, J., concurred with RILEY, J.

---

[18] MCL 15.231(2); MSA 4.1801(1)(2).

[19] Moreover, even if the FOIA did not permit general access to public records, our common law would almost certainly permit such access. *Nowack, supra* at 203-204.