743 N.W.2d 225 (2007)
276 Mich. App. 295
Wayne E. WHITE and Janet D. White, Plaintiffs-Appellants,
v.
BARBARA ANN KARMANOS CANCER INSTITUTE and David S. Eilender, Defendants-Appellees.
Docket No. 270320.
Court of Appeals of Michigan.
Released February 8, 2007, at 9:00 a.m.
Vacated February 23, 2007.
Released for Publication May 14, 2007.
Opinion on Reconsideration July 3, 2007.
On Reconsideration Released for Publication October 26, 2007.
Mark Granzotto, P.C., Royal Oak, Gary B. Perkins, P.C., Rochester Hills, for the plaintiffs.
*226 Tanoury, Corbet, Shaw, Nauts & Essad, P.L.L.C. (by Linda M. Garbarino, Anita Comorski, and Eric G. Tucciarone), Detroit, for the defendants.
Olsman Mueller, P.C. (by Jules B. Olsman, Berkley, and Donna M. Mackenzie), for Citizens for Better Care.
Timothy Reiniger and Michael Closen and The Googasian Firm, P.C., Bloomfield Hills, (by Dean M. Googasian), for the National Notary Association.
The Googasian Firm, P.C. (by George A. Googasian and Dean M. Googasian), Bloomfield Hills, for the State Bar of Michigan.
David R. Parker, Detroit, for State Bar of Michigan Negligence Section.
Before: METER, P.J., and O'CONNELL and DAVIS, JJ.

ON RECONSIDERATION

ORDER ENTERED FEBRUARY 23, 2007
White v. Barbara Ann Karmanos Cancer Institute, Docket No. 270320. The Court orders that a special panel shall be convened pursuant to MCR 7.215(J) to resolve the conflict between this case and Apsey v. Memorial Hosp. (On Reconsideration), 266 Mich.App. 666, 702 N.W.2d 870 (2005), lv. pending 474 Mich. 1135, 716 N.W.2d 558 (2006). Further, this case shall be consolidated with Kaczynski v. Anderson, 274 Mich.App. 49, 731 N.W.2d 442 (2007), conflict certified and special panel convened 274 Mich.App. 801, 743 N.W.2d 225 (2007).
The Court further orders that the opinion in this case is VACATED in its entirety. MCR 7.215(J)(5).
Appellants may file a supplemental brief within 21 days of the Clerk's certification of this order. Appellees may file a supplemental brief within 21 days of the service of appellants' brief. Nine copies must be filed with the Clerk of the Court.
DAVIS, J.
Plaintiffs appeal as of right the trial court's orders granting defendants' motions for summary disposition based on the expiration of the period of limitations. We affirm because we are required to do so under the first-out rule of this Court, MCR 7.215(J)(1), by controlling precedent in Apsey v. Mem. Hosp. (On Reconsideration), 266 Mich.App. 666, 702 N.W.2d 870 (2005), lv pending.[1] However, we conclude that Apsey was wrongly decided, and we declare a conflict with the decision in Apsey pursuant to MCR 7.215(J)(2); we follow Apsey only because we are required to do so. This appeal has been decided without oral argument pursuant to MCR 7.214(E).
On June 12, 2003, defendants provided care and treatment to plaintiff Wayne E. White for cancer. Part of that treatment included the administration of Adriamycin, which plaintiffs allege caused congestive heart failure. Plaintiffs discovered their potential medical malpractice claim on January 13, 2004, when they were advised that the medication caused congestive heart failure. On April 1, 2005, plaintiffs sent defendants a notice of intent to file a medical malpractice claim. On December 7, 2005, plaintiffs filed their initial complaint. Plaintiffs attached an affidavit of merit signed in the state of New York and notarized by a New York notary public. An appropriate clerk of a New York court of record certified the notary, but not until December 23, 2005.
*227 Defendants moved for summary disposition on the ground that the affidavit of merit was a nullity without the clerk's certification of the notary and that the limitations period expired on December 12, 2005, before the affidavit was certified. The trial court granted summary disposition on that basis. A trial court's decision to grant a motion for summary disposition is reviewed de novo. Apsey, supra at 670, 702 N.W.2d 870.
Plaintiffs first argue that the limitations period had not expired when the affidavit was certified. We disagree. The period of limitations for a malpractice claim is two years. MCL 600.5805(6). A medical malpractice claim "accrues at the time of the act or omission that is the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." MCL 600.5838a(1). Alternatively, medical malpractice claims may be filed within six months after discovery of the claim if that six-month period expires later than the two-year period of limitations, but not later than six years from the date of the act or omission. MCL 600.5838a(2). The malpractice alleged here took place on June 12, 2003, and plaintiffs discovered their claim on January 13, 2004. The two-year limitations period expired later than the six-month discovery limit. Therefore, plaintiffs' claim would have expired on June 13, 2005. However, the two-year limitations period is tolled for 182 days during the notice period applicable to medical malpractice actions. MCL 600.5856(c); MCL 600.2912b. Plaintiffs' properly filed notice of intent therefore tolled this period for 182 days, resulting in a final expiration of the limitations period on December 12, 2005.
The primary issue in this case is the significance of plaintiffs' failure to have the notary of the affidavit certified before the limitations period expired. This depends on interpretation of MCL 600.2102, governing affidavits taken outside Michigan, and the interplay between that statute and Michigan's Uniform Recognition of Acknowledgments Act (URAA), MCL 565.261 et seq. Both statutes set forth requirements for the use of out-of-state affidavits; the former imposes significantly more stringent requirements than the latter. In Apsey, this Court concluded that the more relaxed requirements in the URAA were inapplicable and inadequate for affidavits of merit used in medical malpractice cases. We conclude that Apsey was wrongly decided and contrary to precedent.[2]
The substance of MCL 600.2102 is very old. The current first paragraph and subsections 2 and 3 were originally enacted in almost identical form by the territorial government in 1835. See 3 Territorial Laws, pp. 1413-1414 ("An act in relation to affidavits taken, and other judicial proceeding held in other States and Foreign Countries."). The statute was not included in the first compilation of revised statutes upon Michigan's becoming a state (presumably an oversight due to the difficulty experienced at the time in actually locating and sorting all the territorial laws), but was included in the Revised Statutes of 1846 as chapter 102, § 33 as follows:
In cases where by law the affidavit of any person residing in another state of the United States, or in any foreign country, is required, or may be received in judicial proceedings in this state, to *228 entitle the same to be read, it must be authenticated as follows:
1. It must be certified by some judge of a court having a seal, to have been taken and subscribed before him, specifying the time and place where taken:
2. The genuineness of the signature of such judge, the existence of the court, and the fact that such judge is a member thereof, must be certified by the clerk of the court, under the seal thereof: or,
3. If such affidavit be taken in any other of the United States, or any territory thereof, it may be taken before a commissioner duly appointed and commissioned by the governor of this state to take affidavits to be used therein.
The only substantive alteration to subsection 3 since that time was made by 1879 PA 147, which extended subsection 3 to read as follows:
If such affidavit be taken in any other of the United States, or in any territory thereof, it may be taken before a commissioner duly appointed and commissioned by the governor of this state to take affidavits therein, (or before any notary public or justice of the peace authorized by the laws of such state to administer oaths therein. The signature of such notary public or justice of the peace, and the fact that at the time of the taking of such affidavit the person before whom the same was taken was such notary public or justice of the peace, shall be certified by the clerk of any court of record in the county where such affidavit shall be taken, under the seal of said court).
Aside from minor punctuation changes, and a renumbering of the subsections following the addition by 1909 PA 191 of a provision concerning certification by consuls, the language quoted is identical to current MCL 600.2102(4).
We have only found one published opinion interpreting the predecessor of MCL 600.2102(4) before the enactment of the "uniform acknowledgment act," the unofficial name given to the predecessor of the URAA. In 1890, our Supreme Court observed that an affidavit taken in Ohio, with an attached notarial seal but without the certification required by the predecessor of MCL 600.2102(4), was unusable in a Michigan judicial proceeding. Berkery v. Wayne Circuit Judge, 82 Mich. 160, 167, 46 N.W. 436 (1890). Specifically, the Court stated that notaries' authority to administer oaths was a function of statute, and "in this State a notarial seal is not recognized as evidence of the authority of a notary to administer an oath." Id. The Court also explained that the word "read" had very broad application, given that, for example, a clerk could not even file an affidavit without "read[ing] the affidavit to know whether it complies with the statute. . . ." Id. Accordingly, we do agree that MCL 600.2102(4) imposes certification requirements that must be met before an out-of-state affidavit may be used at all in a judicial proceeding.
The relevant substance of the URAA is not as old, but it predates the URAA itself. In 1895 PA 185, the Legislature enacted "[a]n act to establish a law uniform with the laws of other States relative to acknowledgment of written instruments." Section 4[3] of the act provided as follows:
To entitle any conveyance or written instrument, acknowledged or proved under the preceding section, to be read in evidence or recorded in this State, there *229 shall be subjoined or attached to the certificate of proof or acknowledgment, signed by such officer, a certificate of the secretary of state of the state or territory in which such officer resides, under the seal of such state or territory, or a certificate of the clerk of a court of record of such state, territory or district in the county in which said officer resides or in which he took such proof or acknowledgment under the seal of such court stating that such officer was at the time of taking such proof or acknowledgment duly authorized to take acknowledgments and proofs of deeds of lands in said state, territory or district, and that said secretary of state, or clerk of court, is well acquainted with the handwriting of such officer, and that he verily believes that the signature affixed to such certificate of proof or acknowledgment is genuine unless such acknowledgment be taken before a notary public who certifies thereto under his seal of office, when such conveyance or written instrument may be read in evidence or recorded without such certificate. [Emphasis supplied.]
After the enactment of 1895 PA 185, our Supreme Court twice held that under the "uniform acknowledgment act," it was now sufficient for an out-of-state notary merely to attach the notary's seal of office to a given document. Reid v. Rylander, 270 Mich. 263, 268, 258 N.W. 630 (1935); Sipes v. McGhee, 316 Mich. 614, 621, 25 N.W.2d 638 (1947), rev'd on other grounds sub nom Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). The Court explicitly held that the certificate requirement in the predecessor of MCL 600.2102(4) was unnecessary and that "[i]t was sufficient for the officer taking the acknowledgment to attach thereto the seal of his office." Reid, supra at 268, 258 N.W. 630.
The substance of this law was incorporated into the URAA when Michigan adopted it by enacting 1969 PA 57. Among other things, MCL 565.262(a) provides as follows:
"Notarial acts" means acts that the laws of this state authorize notaries public of this state to perform, including the administering of oaths and affirmations, taking proof of execution and acknowledgments of instruments, and attesting documents. Notarial acts may be performed outside this state for use in this state with the same effect as if performed by a notary public of this state by the following persons authorized pursuant to the laws and regulations of other governments in addition to any other person authorized by the laws of this state:
(i) A notary public authorized to perform notarial acts in the place in which the act is performed.
Furthermore, MCL 565.263(1) provides that if a notarial act is performed by such a person, "the signature, rank or title and serial number, if any, of the person are sufficient proof of the authority of a holder of that rank or title to perform the act. Further proof of his authority is not required."
The Apsey Court relied on yet another case, in which our Supreme Court explained that "[t]he legislature has by mandatory provision fixed the requirements necessary to entitle an affidavit sworn to outside the State to consideration," affirming an earlier case holding "that unless the requirements are met the affidavit is a nullity." In re Alston's Estate, 229 Mich. 478, 481-482, 201 N.W. 460 (1924). However, Alston's Estate is inapposite for two reasons. First, the relevant excerpt from that case, on which Apsey relied, was actually a quotation from Berkery. The relevant holding of Berkery was that notarial *230 seals were not recognized in Michigan as evidence of authority. As previously noted, this was clearly overruled by statute with the enactment of the uniform acknowledgment act and the URAA, both of which, as twice confirmed by our Supreme Court, firmly establish that Michigan jurisprudence does now recognize notarial seals, and today even just a notary's signature, as evidence of authority. Second, a careful reading of Alston's Estate reveals that it was based on materially distinguishable facts.
Alston's Estate was decided consistently with Reid and Sipes, because the uniform acknowledgment act simply did not apply to the facts. The Court explained that "[t]he certificate of the clerk of the district court of that county [in North Dakota] did not authenticate the signature of the notary public and did not show that such notary public was authorized to administer oaths under the laws of that State," so "the certificate of the clerk did not comply with [1915 CL 12502(4), the predecessor to MCL 600.2102(4)]." Alston's Estate, supra at 480-481, 201 N.W. 460. It appears that the affidavit in that case was signed but not sealed by a notary and that it was certified by the pertinent clerk of court, but the certification itself was deficient. This would have been unacceptable under the provisions of § 4 of 1895 PA 185, which required the notary to attach "his seal of office," which apparently did not happen. If the clerk's certification also failed to meet the necessary requirements of this statute, as was apparently the case, the affidavit would have been invalid under either method for authentication. The facts in Alston's Estate were therefore significantly different from those in Reid, Sipes, Apsey, or the present case.
Relevant precedent from our Supreme Court therefore establishes that the certification requirement set forth in MCL 600.2102(4) is no longer required unless the alternative requirements set forth in the URAA (or its predecessor) are not complied with. Moreover, in our view, the Apsey Court improperly created a conflict between these statutory provisions where none exists.
The Apsey Court concluded that the URAA governed the validity of out-of-state notarized affidavits generally, whereas "MCL 600.2102 adds a special certification requirement when the affidavit is to be read, meaning officially received and considered, by the judiciary." Apsey, supra at 676, 702 N.W.2d 870. However, such a framework makes no rational sense. It is based on the premise that the Legislature intended to create a construct under which notarized affidavits are considered completely valid and proper, yet cannot be considered for the use for which they are fundamentally intended unless they are subjected to an additional procedural step that has no relevance to the authenticity of the affidavits' content. In other words, despite our Supreme Court's determination that a notarized affidavit is considered valid and proper without the additional certification, Apsey would preclude a court from considering it.
Although Apsey acknowledged that the URAA provides an "additional method," it concluded that such an interpretation would impermissibly render MCL 600.2102(4) nugatory. Apsey, supra at 677 n. 2, 702 N.W.2d 870. MCL 565.268 provides: "A notarial act performed prior to the effective date of this act is not affected by this act. This act provides an additional method of proving notarial acts. Nothing in this act diminishes or invalidates the recognition accorded to notarial acts by other laws of this state." The Apsey majority appears to have functionally ignored this provision of the statute altogether.
*231 "It is a well-known principle that the Legislature is presumed to be aware of, and thus to have considered the effect on, all existing statutes when enacting new laws." Walen v. Dep't of Corrections, 443 Mich. 240, 248, 505 N.W.2d 519 (1993). The Legislature was therefore aware when it enacted the URAA that it was, as stated in the plainest of language, establishing an "additional method of proving notarial acts." MCL 565.268. The URAA and its predecessors were enacted later in time than the relevant provisions of MCL 600.2102. The only possible construction of this language, under the circumstances, is that an out-of-state notarization may be validated for use by the Michigan judiciary using either the procedure set forth in the URAA or the procedure set forth in MCL 600.2102(4). It strains credulity to conclude that, just because an older procedure may be used less as a result, the Legislature could not have intended to provide an easier, less cumbersome way of accomplishing a desired objective. Providing an alternative, even providing an easier alternative, does not render the first method nugatory. The URAA is not intended to diminish or invalidate "the recognition accorded to notarial acts by other laws of this state," MCL 565.268, and it does not do so. It may well diminish how frequently the provisions of MCL 600.2102(4) are used, but that is implicit in providing an alternative, so any resultant diminution from having a second option was unambiguously intended by the Legislature.
We hold that Apsey was wrongly decided. An out-of-state notarized affidavit must conform to either the requirements of the URAA or those of MCL 600.2102(4), and these provisions do not conflict. The result from Apsey is neither "fair" nor "just," as our citizens would understand those terms. As a result of the Apsey decision, potentially serious cases alleging bodily injury, disfigurement, and even death are being dismissed, irrespective of their merits. These cases are not being dismissed for lack of merit, lack of sworn medical testimony in support, or lack of a notary's acknowledgment that a witness appeared and gave testimony under oath. Rather, they are being dismissed only because a court clerk did not sign a statement that the notary was, in fact, a notary. If a notary's bona fides are ever truly an issue, the burden of proof, as always, will be on the plaintiff to establish those credentials. Finally, as the United States Supreme Court observed regarding the admission of an otherwise-proper instrument that had not been properly sealed:
The record of the instrument is really but secondary evidence, although by statute it is made primary; and it would be sticking in the bark to hold that the original instrument, having the official seal of the notary to the acknowledgment, should be defeated by the fact that in recording such instrument the seal was accidentally omitted. . . . It would be a singular perversion of the principles of natural justice if, with a perfect deed before the court and a record which lacked only a scrawl or other symbol of a seal, neither could be admitted in evidence by reason of the fact that they did not exactly correspond, or, to speak more accurately, were not exactly identical, especially when the record could be amended on the spot by adding the representation of a seal. [Smith v. Gale, 144 U.S. 509, 523, 12 S.Ct. 674, 36 L.Ed. 521 (1892).]
It would be similarly "sticking in the bark" to conjure a statutory construction under which an affidavit could be otherwise perfectly appropriate but nevertheless inadmissible for want of a substantively irrelevant *232 certification.[4]
By the first-out rule of this Court, we are bound to follow Apsey, even though we conclude that it was wrongly decided. The affidavit of merit in this case lacked the certification required by MCL 600.2102(4) at the time the relevant limitations period expired. Under Apsey, the affidavit was therefore a "nullity," and it did not toll the period of limitations. Apsey, supra at 676 n. 1, 682-683, 702 N.W.2d 870. Although a proper certification was later filed, a "belatedly filed certification of an out-of-state notary public would not cure the defect in an otherwise timely complaint and affidavit." Id. at 678, 702 N.W.2d 870. Accordingly, we are bound by Apsey and the first-out rule of this Court to conclude that the limitations period expired before plaintiffs filed a proper affidavit of merit. If we were not so constrained, we would reverse on the ground that the URAA, as the Legislature explicitly stated, provided plaintiffs with an alternative method of proving notarial acts.
Affirmed.
O'CONNELL, J., concurred.
METER, P.J. (concurring).
I concur in the outcome reached by the majority but write separately to express my opinion that Apsey v. Mem. Hosp. (On Reconsideration), 266 Mich.App. 666, 702 N.W.2d 870 (2005), was correctly decided.
MCL 600.2102(4) provides the following method for authenticating an affidavit obtained in another state:
[S]uch affidavit . . . may be taken before . . . any notary public . . . authorized by the laws of such state to administer oaths therein. The signature of such notary public . . . and the fact that at the time of the taking of such affidavit the person before whom the same was taken was such notary public . . . shall be certified by the clerk of any court of record in the county where such affidavit shall be taken, under the seal of said court.
Plaintiffs did not meet this authentication requirement before the limitations period for their claim expired. Accordingly, under the authority of Apsey, supra at 677-678, 682-683, 702 N.W.2d 870, their lawsuit was barred, and the trial court properly granted summary disposition to defendants. The Apsey majority provided a persuasive analysis for applying MCL 600.2102(4), instead of the more relaxed requirements of MCL 565.261 et seq., in a case such as the present one. See Apsey, supra at 671-676, 702 N.W.2d 870. I do not find persuasive the alternative analysis provided by the majority here.
I concur in the result reached by the majority.

ON RECONSIDERATION
Plaintiffs appeal as of right from the trial order's granting defendants' motions for summary disposition based on the expiration of the statute of limitations. We reverse and remand.
*233 The affidavit of merit in this case was notarized by an out-of-state notary, and it lacked the certification required by MCL 600.2102(4) at the time the relevant limitations period expired. However, the affidavit of merit otherwise satisfied the requirements of the alternative method of proving notarial acts set forth in Michigan's Uniform Recognition of Acknowledgments Act (URAA), MCL 565.261 et seq. In our prior opinion, White v. Barbara Ann Karmanos Cancer Institute, 274 Mich.App. 801, 743 N.W.2d 225 (2007), we affirmed because we were obligated to do so by this Court's earlier decision of Apsey v. Memorial Hospital (On Reconsideration), 266 Mich.App. 666, 702 N.W.2d 870 (2005). In Apsey, this Court had held that the requirements in the URAA were unavailable for out-of-state affidavits of merit used in medical malpractice cases. A majority of this panel concluded that Apsey had been wrongly decided, and we declared a conflict pursuant to MCR 7.215(J)(2).
A special conflict panel was convened pursuant to MCR 7.215(J)(3). While the conflict panel was pending, our Supreme Court reversed this Court's decision in Apsey and held that the URAA and MCL 600.2102 provide alternative methods for using out-of-state affidavits. Apsey v. Memorial Hosp., 477 Mich. 120, 730 N.W.2d 695 (2007). Because this resolved the conflict, the conflict panel, under MCR 7.215(J)(5), returned this case to us for further consideration in light of our Supreme Court's decision in Apsey.
On our own motion, we now grant reconsideration. For the reasons set forth in our prior opinion in this case and in our Supreme Court's recent decision in Apsey, we reverse and remand for further proceedings. The trial court granted summary disposition on the grounds that the affidavit of merit was a nullity at the time the limitations period expired. Because the affidavit of merit satisfied the requirements of the URAA, it was not a nullity. The trial court's grant of summary disposition was therefore erroneous.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] Our Supreme Court held oral arguments on November 1, 2006, "on whether to grant the applications [for leave to appeal and leave to cross-appeal] or take other peremptory action." 474 Mich. 1135, 716 N.W.2d 558 (2006).
[2] However, we agree with the Apsey Court's holdings that the "structural placement" of the pertinent provisions within the Michigan Compiled Laws is irrelevant; that MCL 600.2102, MCL 565.262, and MCL 565.263 are in pari materia; and that those provisions can be harmonized. Apsey, supra at 674-675, 702 N.W.2d 870.
[3] Section 4 of 1895 PA 185 became 1897 CL 9023, 1915 CL 11758, 1929 CL 13333, and finally 1948 CL 565.254 before being repealed by 1969 PA 57, the same public act that enacted the URAA.
[4] Moreover, the certification required by MCL 600.2102(4) may be impossible to obtain in some jurisdictions. We have not attempted to research the pertinent laws in all 50 of the United States, but see Fla Stat 117.103, explicitly stating that notaries public need not record their commissions with court clerks and that "[i]f certification of the notary public's commission is required, it must be obtained from the Secretary of State." Therefore, it appears that under a literal application of Apsey, an affidavit from Florida could never be considered by a Michigan court. See also Kaczynski v. Anderson, 274 Mich.App. 49, 731 N.W.2d 442 (2007). We doubt that Florida is the only state so affected.